Our fourth case for this morning is Brian David v. Stephen Chalstrom And we'll begin with Mr. Smokowitz May it please the court, Assistant City Attorney Jan Smokowitz from the City of Milwaukee for the appellant Stephen Chalstrom This matter is a 1983 action. We are appealing the District Court's summary judgment decision denying summary judgment to Mr. Chalstrom in particular with respect to the Fourth Amendment claim that was lodged against him for an allegedly unlawful search of the exterior premises of the single family residential property at issue in the case Mr. Smokowitz, the District Court did not resolve the question of qualified immunity during the summary judgment proceedings So all we have is a denial of a motion for summary judgment based on an open fact question. What I've been trying to figure out here is what is the source of appellate jurisdiction? My exact question, and I suspect Judge Tinder has it as well. True. I'm going to do my best to answer that question given the order that Judge Stattmuller below gave us. I think under the Haynes case we argued that extensively in our brief. I don't think this looks like Haynes though. What Judge Stattmuller says in his little page and a half order is unfortunately the record in this case is not sufficiently well developed with regard to the four factors to be considered in determining whether an area constitutes the curtilage of a home. That's it. I mean there isn't anything like the extra information in Haynes to give the court confidence that somebody even knew qualified immunity was floating around out there and we have Johnson against Jones of course. Qualified immunity itself can depend on a disputed issue of fact and if it does then the Supreme Court has told us in Johnson that there's no appellate jurisdiction. These are big problems for you I think. To the first point, Your Honor, I would say this. With respect to Haynes, one of the important features is that the question of whether or not the issue of qualified immunity was explicitly raised. Below it was. As we pointed out it was raised in both of our briefs. An element of the qualified immunity in any case is the substantive issue. That is whether there was a violation of the right substantively. And the district court says there are factual issues. So why doesn't that send you right into Jones? The shorthand statement that Judge Stadmuller in the order indicates there is not that there are factual issues but rather that he apparently believes that there are additional facts which he does not identify which need to be added. Well again, Your Honor, he doesn't identify what needs to be developed in the record. The only facts are the facts that are there. He does accept Mr. Davis' description of this walkway to the south of the house as a private walkway. Doesn't that suggest that there's a fact issue there that he thinks needs to be determined? I don't know that. He thinks that from the opinion. Here's why. I don't think there's any dispute that it's there. David clarifies without objection by defendants, that would be your clients, that the passageway is a private walkway. So he's not going to create a fact issue where there isn't one. I agree. And there's no dispute as to the existence of the walkway. It's shown photographically. And if it's private, there's an issue. I mean, are you willing to concede as a factual matter that the inspector was on the plaintiff's curtilage when he conducted the inspection? The problem is that word curtilage, and that implies that there's a Fourth Amendment privacy right for Davis as to any inspector from being on that private walkway. We would disagree in terms of qualified immunity analysis, given the earlier decisions of this court about driveways, French and Evans, for example, that officers can go on private driveways of property. But not inside the curtilage, what we've all talked about, this lovely common law word. I think you're going too far. But the word curtilage implies that you, as Judge Friendly says, we pointed out in our briefs, that's sort of the conclusion. The question is whether or not the private walkway is in the curtilage. I would like you to go back and answer the question Judge Rovner just asked you, which is whether you're prepared to concede that even inside the curtilage, whatever it may be, is it your assertion that these officers had the right to be there? It is our assertion that the building inspector had the right to be on that private walkway. Inside the curtilage? That's the question Judge Rovner asked you. I don't want you to evade it. I'm trying not to evade it, Your Honor. I'm trying to say that we concede the first point, that he was there. The second point is we don't concede. We don't concede that that's curtilage. For Davis. At a minimum, Your Honor, he shares that walkway with delivery people, with the mail carrier. Was it the curtilage? I would say no, Your Honor. Oh. Because it's a shared, it's a rental property. You also concede he was on the lawn off of that walkway. I have to concede because Mr. Charleston conceded that in his affidavit, Your Honor. Yes, he said that he went to the grass in some areas of this property. It would be obvious from the photographs that someone else took up, apparently not him, that to do some of the inspection, you would have to walk off of the walkway some distance to get to those things. Again, our point is not that it's just on the walkway or just on the front sidewalk or just in the alley, but that those areas are not, quote, curtilage, close quote, as to Mr. Davis, who is the landlord, who would share the property with a tenant at a minimum and whose tenant would allow other people, undoubtedly, to come there, such as perhaps mail carriers, the cable repair person. I mean, I see where you're going with this, but I'll tell you, my biggest concern with your position is that I don't see any decision denying summary judgment in a case where there's a municipal defendant that wouldn't be immediately appealable at that point under your theory. And that's not the law, and that's not what the situation in Haines presented. And maybe we went too far in Haines. Maybe we should have held the line better. So I just don't see why this fits into the immediate appealability doctrine for qualified immunity. Again, I think primarily for two reasons here. One, the issue was raised and addressed thoroughly below. But not by the district judge. The district judge didn't rule on it. Implicitly, he did. Why? Because he determined that there's curtilage here, which would answer the question that if there's a trial, no reasonable building inspector in that situation could have not known that he was invading the curtilage. No, he didn't determine that this was curtilage. He says the record isn't developed enough to make that determination. He says the record isn't developed enough as to the extent of the curtilage, which means there is curtilage. No, it doesn't. You're reading things into it that are not there. Maybe you'd like them to be there, but I don't see them. Well, again, I will try to just keep myself out. I see I'm into the rebuttal time. But Judge Statmiller, he says the record is not sufficiently well-developed with regard to the four factors to be considered in determining whether an area constitutes the curtilage of the home. Well, the area he talks of is this adjoining private sidewalk 18 inches away. Some, all, or none? I mean, that's the problem. But anyway, why don't I let you save a minute for your rebuttal? Thank you, Your Honor. Proceed. Thank you. Mr. Hanson. Counsel. May it please the Court, my name is Tim Hanson, and I represent Mr. Davis, who is in court with me, for purposes of oral argument. We agree that Johnson v. Jones really controls the jurisdictional issue here. There was not an explicit finding by Judge Statmiller regarding the qualified immunity. There's one fact issue that should be tried. He denied summary judgment because of an insufficiently developed factual record. Johnson v. Jones says that a summary judgment order in a qualified immunity case that determines only a question of evidence sufficiency is not appealable. Judge Statmiller held, unfortunately, the record in this case is not sufficiently well-developed with regard to the four factors to be considered in determining whether an area constitutes the curtilage of a home. In other words, why didn't you push for a ruling? I'm sorry? Why didn't you push for a ruling on qualified immunity before you came here? Well, I wasn't representing Mr. Davis below, but we won, he won summary judgment. He defeated the city's motion for summary judgment, so there'd be no need at that point for Mr. Davis to clarify a win. It really fell to the city, which is the preferred methodology, I believe, that the city should seek a clarification if there's any question about whether qualified immunity was abrogated. So let me ask you a legal question. Suppose curtilage, or do we not need to decide whether the entire issue of curtilage is relevant or irrelevant for landlords? The city makes quite a point of, they call them an absentee landlord, but unless the landlord's living upstairs, all landlords are absentee. But they do raise the point that the interests, the privacy interests and the personal interests protected by curtilage might be different if somebody is not the occupant of property. I think that's a bit of a red herring because obviously the curtilage is an extension of the home, and there doesn't seem to be any dispute that Mr. Davis, as a landlord, as a property owner, what have you, as someone with a property and ownership interest in that house, has a privacy interest that's protected by the Fourth Amendment with respect to the home, the interior of the home. These inspectors would not dare walk through the front door of that house without a warrant. They know that. So you think that's where the city's argument goes, that if you're a landlord and you have no interest, then there's no warrant even to go inside? I think so. Crazy. The position essentially is, because remember what happened factually here, although there's an insufficient record, we do know a few things. And one of the things we know from the inspector's own affidavit is that he went not just down the private walkway. He kept going and went into the backyard. If you look at the appendix to – And he says that in his affidavit that he went onto the lawn. Well, he equivocates. The affidavit is equivocal. He says things like, excuse me, perhaps the lawn. I either walked or returned to my car. Perhaps the grass around the exterior of the house. Perhaps the lawn. But they concede in their briefs on multiple occasions he was in the yard. It's the only way you can get these photographs that are part of the appellant's appendix. This is where I had problems. Because we have legions of cases allowing police officers to walk up to a door that the public can easily access. I mean, what I've been trying to figure out is if anything more happened here. I don't think I'm getting the whole – Well, I think when you look through – well, this is another reason why it should just be affirmed and tried. But I do think that the record that is developed so far, at least through Mr. Charlesstrom's affidavit – and by the way, not subject yet to cross-examination, which I think is critical because of the equivocations and inconsistencies within the affidavit. But he clearly went down the – he went up to the front door, knocked on the door, went back. By the way, there's a no trespassing sign 18 inches by 12 inches in the front window. He had to have seen it. Walks down the lawn, no trespassing sign, down the private walkway. Private walkway stops at the yard. Now, maybe then, even at that point, he might be invading our curtilage. But let us assume that that's not curtilage, that that is a private walkway, but that the public or laundry delivery guy or whoever it is can go there. Maybe at that point he could look around and observe, and that would support an affidavit for a warrant. But he doesn't. He goes into the backyard. If you look at the photographs attached to his affidavit, I don't know if he took those. It's not clear. He doesn't say he didn't. He said that they apparently were taken a year later. So it's unclear whether he came back to the property on an undisclosed time. In any event, he avers that those pictures accurately reflect what he saw there, including standing on the back deck, going to the gate at the back of the yard and looking at it, looking all around at the gutters. He was all over that backyard on more than one occasion without a warrant. And I submit that his only job is to be a residential property inspector. He should be an expert more than anyone in what constitutes curtilage. And the Seventh Circuit has tons of case law that demonstrate that a backyard attached to a residential single-family house is curtilage, plain on its face. And he wandered around that curtilage no different than if he had wandered around his living room. But certainly I don't see how he could possibly take the position that a backyard in a small suburban community in Milwaukee on a single-family property with an attached yard is open to the public, any more so than your living room or your kitchen is. Of course, the meter readers, the cable guy, and so forth, do go on to those areas. It depends on where those meters and things are. And those, you know, the cable guy is an invitation. Ultimately, it's going to be Mr. Davis' burden to show that it was curtilage, correct? Yes. And also that qualified immunity doesn't apply. Correct. It's his burden. On summary judgment, though, I don't think that the city even met its prima facie standard to establish a right to summary judgment that would put the burden back on us. At trial, it's ours. And that's fine. That's why he denied our summary judgment motion as well, presumably. But your primary position, I thought, was that we should simply dismiss this appeal on Johnson v. Jones. Yes. Yeah. I think you can, and I think it would go back and be tried. Because, you know, this question of whether there was a constitutional violation depends, at least in part, on whether what this inspector, what he did at the property, and where he went on the property, and whether the area searched without a warrant was curtilage. If it was, it's a clear constitutional violation. Those factual questions might be intertwined with some of the information needed to determine whether he's entitled to qualified immunity. But this court has no problem identifying when those issues are conflated or intertwined. They're tried together as one fact. That was Johnson v. Jones. Now, Mr. Davis was pro se downstairs, wasn't he? He was. And I think did an admirable job getting to the point where he's going about to try a case in federal district court and survive summary judgment against a worthy opponent in Mr. Smokovitz. I think he did Yeoman's work on the briefing as well. He came to me because I think he just felt a little intimidated. He did, but I'd have to say you're always better off with a lawyer. I like to think so. These are some pretty delicate issues. I couldn't agree more. You certainly came up to snuff fast. Well, thank you. I appreciate that. What, less than a month, huh? Yeah, a couple weeks. We appreciate your help to your client. Well, thank you. It's my pleasure. It's my privilege to represent him. He's a good guy. Unless there are other questions for me, I'll sit down. Apparently not. Thank you very much. Anything further, Mr. Smokovitz? I think you have about a minute. I do want to completely rebut any claim or any argument or any insinuation that Mr. Charleston would have thought that he could have gone inside the house without a warrant. That's not an issue here. Understood. What I was saying is the logic of saying that there's no privacy interest held by a landlord would lead you to say that you could also just go in the house, and I'm assuming you're disclaiming that logic. We would disclaim that. I mean, first of all, going into the house, you would know exactly for certain whether there's a tenant there. You could be invading the intimacies of someone's life. That's the whole purpose behind the Fourth Amendment, as indicated by the Supreme Court and done. You know, I did direct my question to the wrong person, and I am wondering why you all didn't push for a ruling on qualified immunity. Well, we did make the motion in a timely fashion, and the judge gave us a decision. I'm certain in yeoman effort, under his deadlines, it was about 10 days before the 14 days, I should say, before the trial, 13 days before the trial. There would have been no opportunity for a reasons motion for reconsideration and response and consideration by the court. It just simply was not there at that point. So we felt we had no choice at that point but to take an appeal, especially given the fact that the lower court had not cited that there were factual disputes, and we felt that, in the absence of any kind of indication of factual disputes, that we had argued the case sufficiently, we had brought the facts that were relevant to the issue to the court's attention, especially on qualified immunity issues where we're talking about whether there was any case, controlling case from this circuit or a combination of circuits that would have said, doing what he did, even assuming all the things we talked about today, going into a backyard on an adjoining private driveway and the like, that he couldn't do that. Any reasonable inspector at that point would have known that what he was doing was wrong with respect to this rental property. That's why we took the appeal, and that's why we would ask for reversal. All right. Thank you very much. Thanks to both counsel. We'll take the case under advisement.